Carbo, are you ready? Thank you, Your Honor. May it please the Court, Larry Carbo and Paige Kalish for the appellant cellular sales of Knoxville and Cellular Sales of South Carolina. Your Honor, what this case comes down to is two plaintiffs that seek the benefits of employment but do not want the consequences of that employment. And what I'd like to do initially is give a little bit of background here as to the relationship between cellular sales and these two plaintiffs in connection with their employment relationship and a prior independent contractor relationship. And I think that's important because I don't believe that I did a very good job doing that before the district court because I think the district court entered an order that maybe indicated that there was some misunderstanding as to the prior relationship. So if I could, cellular sales is a company that has a contract with Verizon to sell the Verizon wireless service in various states throughout the country including South Carolina. Prior to January 1st, 2012, cellular sales did not have employees as sales representatives to sell this service. Although the plaintiffs allege that de facto they were employees. That is what the plaintiffs allege which is why we're here today, Your Honor. Right, they bring the FLSA claim. That's absolutely correct, Your Honor. The argument that the plaintiffs have, both of the claims that they bring in this lawsuit are claims that necessarily require that they are employees. So to prevail on those claims, they will have to demonstrate that in fact they were employees which gets us to the compensation agreement that each of these individuals signed when they became employees of the company. They signed the agreement on January 1st, 2012. Cellular sales made a global change to the way it was conducting its business in January of 2012 and as part of that decided to actually hire sales representatives as opposed to contracting with sales companies. Now there's no dispute, at least from my client's perspective, that prior to January 1st, 2012, these individuals were not employees of the company. I'm sorry, you say there's no dispute. Of course there's a dispute. The plaintiffs allege they were in fact employees. My client's position has always been that they were not employees until January 1st, 2012. These two individuals were employees of their own company that contracted with Cellular Sales. Right, and that's the dispute. Exactly, Your Honor. So if I could turn then to the compensation agreement here and the arbitration clause that is at issue. I think it's important to look at the language of that contract because of the district court's ruling because the contract itself does not limit the arbitrable claims to those claims arising from the compensation agreement. In fact, it's very clear that it says it's claims disputes or controversies that arise out of the document, the document being the compensation agreement that they signed in January of 2012 or the employee's employment with the company. So that or there necessarily means that there's something else besides What's the company? The company is Cellular Sales, Your Honor. Right, and that existed at the same time they signed that document. There was no pre-existing employment with the company before that. That's your position. They weren't employees. They were not employees before the time they signed that document. So therefore there was no pre-existing employment relationship with them in your company. Their relationship was with their sales company, right? Absolutely, Your Honor. All right, so what you want to do is you want to make an arbitration clause not only be it's a forcible retroactivity, but you want one where it makes someone susceptible to arbitration. They weren't even parties before that time. That's absolutely correct, Your Honor. If I can explain why I think that in this particular case it's appropriate, I think it's appropriate because if we assume for a moment that these individuals were employees prior to January 1st, 2012, which is what the plaintiffs will ultimately have to prove to the court. I'm sorry to interrupt, but why would we assume that? We don't have to assume anything. In order for the plaintiffs to prevail in this case, there will have to be a finding that they were employees. There will have to be a finding, exactly. But we don't have to assume anything. We don't make findings up here. That's the role of the trial judge. But for purposes of whether or not the court should compel arbitration, you have to look at the pleading itself. If you look at the plaintiff's complaint and you go through the plaintiff's complaint, throughout the complaint they allege that they were employees prior to January 1st, 2012. Which is why we don't have to assume it. That's what we look to at this point. You look at the complaint. That is correct, Your Honor. And the complaint itself specifically says or alleges that the plaintiffs in this particular case were employees at all times prior to January 1st, 2012 and at times after January 1st, 2012. The plaintiffs make that concession. You're referring to the now inoperative complaint. No, Your Honor. I'm referring to the amended complaint, which is the complaint that the district court entered its order denying the motion to compel arbitration on. The district court looked at the amended complaint and looked at the amended complaint. All it did was to carve out any claims after January 1st, 2012 when the conversion occurred. Exactly. And that's why I'm sorry. I really don't mean to keep interrupting you, but you said you alluded to allegations about post-January 1st, but the plaintiffs have essentially abandoned any claim purportedly arising after January 1st. They do abandon their claims after January 1st, 2012, but they don't abandon their claims that they were in fact employees prior to January 1st, 2012. Exactly. In fact, in their complaint, they continue to take the position that they were employees prior to January 1st, 2012. Right. And what I was trying to explain before is if these people were employees prior to January 1st, 2012 and they would have signed this compensation agreement on January 1st, 2012 that had the arbitration provision, and had there not been an arbitration provision before that, I think the Fourth Circuit is clear that that would be retroactively applied to these individuals' pre-January 1st, 2012 relationship. So if we look at how this plays out with the allegations in the complaint, which is what we have to rely upon, these individuals are saying that they are employees. If they were employees prior to January 1st, 2012, it doesn't matter under Fourth Circuit law that they didn't sign an agreement to arbitrate their claims until January 1st, 2012. You're not using this language, but it really sounds like you're arguing some form of judicial estoppel or something. I understand retroactivity and certainly this court and the Supreme Court have been very willing to find retroactivity when it comes to sort of intervening arbitration clauses. But here, we have very different facts. We have on the ground real facts that these plaintiffs were employees of their own LLCs. Now, for purposes of the FLSA claims, they allege that they were de facto employees and should have been treated as employees for wage purposes by your client. But that's a far cry from the counterfactual hypothetical you just articulated, which was, suppose they never had an LLC before January 1st, then they signed these contracts requiring arbitration, I think you'd win. I think you would have won below. I think the district court would have said, well, under Fourth Circuit law, it's a look back and a look forward when you insert an arbitration clause into an agreement midstream. But that's not what happened here. It's absolutely not what happened here, and I would agree with Your Honor that that would certainly make it a much easier case from my client's perspective. I think it's a very different case. I don't know that it's a very different case. I can't agree that it's a very different case because I don't believe that what the district court had to do in connection with determining whether or not these claims were subject to the arbitration is to look to the complaint itself. And if you look to the complaint itself, the allegations of employment is what triggers the arbitration clause in this particular case. Arbitration clause comes by contract agreement, right? That's correct, Your Honor. All right. Now, it is undisputed. Forget about allegations. We don't need allegations when it's undisputed. It's undisputed in terms of contractual standpoint. They were employed by a sales company. They had no contract with your company, correct? That's not a law. That's correct. Prior to January 1, 2012, the individuals did not. All right. Forget about what they allege because you both kind of talk out of both sides of your mouth on that. Not employees, are employees, all that kind of thing. But was that the case? Isn't this case more than retroactivity? I think Judge Davis was laying out in terms of this intervening. You're asking for retroactivity and you want to apply it when the party you want to have it enforced against was not a legal and there was no contractual privity with you. See, it's different. In other words, you were an employee the year before, now you're an employee now. It's retroactive where you are the same status. But the problem here is not only retroactivity, they were not in contract privity with your company. And that's not disputed, correct? That's not disputed, Your Honor. But what my client contracted for in January of 2012 when it had these individuals sign the compensation agreement as a condition of their employment was that all employment-related disputes were going to be compelled to arbitration. And in this particular case... And you said with the company. With the company, that's correct, Your Honor. But you made the choice of the words, you should have said not just employment, but whatever position you were in prior. In other words, when you said with the company, legally they were not employed by your company. I understand, Your Honor, but the dispute that we're litigating is now an employment-related dispute with the company. The claim is being brought against the company. My client contracted in January 2012 that those types of claims, any employment-related claims, are going to be compelled to arbitration. So at some point, if in fact the plaintiffs are successful in proving that they were not independent contractors and were misclassified, there is going to be an employment-related dispute because it's necessarily an FLSA and a South Carolina wage claim that the court will have to consider. So I don't know that the prior relationship, while it certainly muddies the waters a bit in this particular case, at some point this is an employment-related dispute that everyone agreed was going to be subject to arbitration. And I'll reserve the rest of my time. Thank you, Your Honor. Thank you so much. Mr. Dodson. Thank you, Your Honor. May it please the Court, Robert Dodson for the appellee, Dan Newbanks and Jenny Walton. The issues before this Court are simple and straightforward issues. First, can a party be compelled to arbitrate claims they did not agree to arbitrate? And the second issue is can the Court enforce an arbitration agreement that not only forces arbitration on the plaintiffs, but also attempts in the wording of that very arbitration agreement to rip away from the plaintiffs statutorily guaranteed rights under federal statute? The answer to both of those questions is no. The answer no was reached by the District Court on the first issue, and it should be affirmed here today. The appellant's argument to this Court on this first issue that whether the arbitration clause at issue applies must be based on the allegations of the claim is off-base and wrong. That is not the law in this circuit. That is not the law in the United States. In making this argument, what the appellant is doing is taking a legal standard, a legal definition of employee under one statute, and trying to apply that to a private contract. And you simply can't do that. Ironically enough... Well, your claim is that the appellees are employees, and so they are entitled to certain wage and hour considerations. That's your claim, correct? And that's what we need to look to now. So how is that not an employee-related dispute when we're to look at the very broad language of the arbitration clause here and the law favors arbitration? I'm glad that you asked the question, Your Honor. And I'm glad that you asked because the point that I want to make to this Court is this. For the purposes of our complaint, whether that be the original complaint or the amended complaint... Right, they're the same. When we plead in our complaint that they violated the Fair Labor Standards Act, what we are saying to the Court is, Court, we meet the legal standard set forth for employee under the Fair Labor Standards Act. We meet that standard, and therefore we get the protections afforded to us under that statute. Right, you want the protections of that statute. I mean, I don't know how a Fair Labor Standards Act complaint is not an employee-related dispute. So you want the protections of that statute, but then you don't... You want to have your cake and eat it, too. You don't want arbitration for this employee-related dispute. We don't, Your Honor. We respectfully don't. And this is why. Because when we plead, we are pleading as to the merits of our case that we meet this standard, okay? But when it comes to the FAA, what this Court has always focused on is the contracts. Not so at all, not so at all with regard to the Fair Labor Standards Act, okay? Under the Fair Labor Standards Act, what the parties contract for doesn't matter. There is a different standard set forth under the Fair Labor Standards Act than there is for purposes of the FAA. In fact, doesn't the Fair Labor Standards Act actually prohibit forfeiture of the benefits and rights under that statute? Absolutely. It's one of those unique federal statutes that says the person can't sign away these rights. That is absolutely correct, Your Honor. And that goes to the second issue that I raised. Which is not to say, I'm sorry, but it's not to say you can't arbitrate those rights. That's right. But you can't sign them away. That is absolutely right. Under both the FAA and the Fair Labor Standards Act, when you take those two acts together and you take the case law together, what you can do is you can agree to change the venue or change the forum of where you resolve disputes under the Fair Labor Standards Act. But you can't prospectively waive your statutorily guaranteed rights under the Fair Labor Standards Act. Would you have a collective action right under the arbitration clause in this case? I don't remember what it said. If we just looked at the arbitration clause itself, no. Could we bring a class action under the arbitration clause if that was an enforceable clause, which I'm going to argue that it was not. But no. I believe that it says, and it's on page 70 of the Joint Appendix. It says you can't bring a collective action. But it goes beyond that, Your Honor. It goes far beyond that because it goes on to say, among other things, that we can't recover statutorily, we can't recover statutory damages. The Fair Labor Standards Act says we can get liquidated damages. The Fair Labor Standards Act says we can get attorney's fees if we prevail. But under this arbitration agreement, it says that we can't do that. It says the parties agree that no arbitrator has the authority to award punitive damages or other damages not measured by the prevailing party's actual damages. Judge, you can't do that. I don't mean you can't do that. I mean they can't do that. You're the judge. You can do anything you want to. Well, that's not true. Congress makes that clear. But humor aside, they can't do that. Can I ask you this? Yes, sir. Have you all proceeded yet in the district court to identify the members of the class here, the collective action? We have not. Things have just stopped pending appeal? What's your estimate of how many members are going to be in the collective action? I would estimate several hundred. Several hundred. But that is... So if it's a willful violation, it's a three-year look back. We're talking about some real money here, potentially. We're talking about some significant money. And the estimate I gave you is I'm really just... I'm guessing. I really am guessing. But to answer your question, we think it's several hundred, maybe over 1,000. I don't know. But my point earlier was that... And I want to be clear, Your Honor, we didn't do a good job briefing this. We did not do a good job briefing the issue of what does the arbitration clause actually say aside from the employee... but getting beyond that part of the arbitration. And that's why I want to make clear to the court here today, you simply can't enforce this arbitration clause because it's not just an arbitration clause. It's a lot more than that. It attempts to rip away statutory rights that Congress has afforded to the plaintiffs. And that's why I was saying to Your Honor's question earlier, when you asked about employee and doesn't this involve an employment dispute, that's why I was saying earlier to that question that when we make legal pleadings, what we are saying to the court is we meet the standard of the statute that we're suing on. We meet that standard, okay? Because in the law, there are different standards. Even in this area of labor and employment law, there are different standards. There are different legal tests. There are different legal definitions of employee, employer, independent contractor. Okay? And for purposes of the FAA, that doesn't matter because under this circuit's FAA law, what matters is how the parties contracted. What governs is how they contracted. Well, how they contracted changed pretty radically because what they contracted for prior to January 2012 was a relationship of independent contractor and that changed after that. They get to define their relationship for purposes of the FAA. That's what the FAA does. It encourages the parties or if it doesn't encourage it, it at least allows the parties to contract for what they want to contract for with regard to arbitration. It allows them to arbitrate disputes as opposed to litigating disputes and they can contractually agree to any relationship that they are. You don't limit the FAA's reach to just labor and employment issues. I mean, it can have all kinds of far-reaching implications. Contractor with subcontractor. And a whole host of variety of other things. That's what that act allows. But with regard to the Fair Labor Standards Act, that's a different legal standard altogether. And the standard there is, you know, an economic reality standard. Well, look, in this area of law, we get into this issue in tort law too with regard to the doctrine of respondeat superior. We get into this and we say that, you know, in order to prove a respondeat superior, you have to show that the alleged employer had actual control of the manner of performance. Well, that's a different standard than what the parties contracted for here. That's a different standard than what the Fair Labor Standards Act implies. No, no, sir. No, sir. No, no. No, sir. Not at all, sir. But again, take another example. There is no question that this circuit, and they've cited a host of cases. There's no question that this circuit has retroactively applied arbitration agreements. No question about that. All right, now, the cases that they've cited to you differ in four significant ways, okay? First of all, they differ because in every one of those cases, every one of the cases they cited for to you, they didn't, the parties agreed to arbitrate, but that didn't change the underlying rights that they were disputing. They didn't try to rip away statutorily guaranteed rights in any of those cases because you simply can't do that, Your Honor. And all of those cases are different because all of those cases were, essentially, we agree to arbitrate. We agree to arbitrate. We agree to arbitrate. But this arbitration clause, that's now before this court, went far beyond that because it took away statutorily guaranteed rights. And the district court never reached that issue because the district court simply concluded the plaintiffs are going to limit themselves prior to January 2012, so that essentially resolved the issue. But it's certainly relevant here today because when you look at the Supreme Court and what the Supreme Court has said about this, they said in the Gilmer v. Interstate slash Johnson case, this is a quote, in dealing with an ADA claim, so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitration forum, the statute, meaning the ADEA, will continue to serve both its remedial and deterrent function. But that reasoning and that logic applies equally to FLSA claims. And in fact, this court, and I didn't cite these cases in my brief, and I apologize for that, but in two cases from this court, in the Henri Cotton Yarn antitrust litigation and in the Poteet v. Rich Products corporation case, relying on Supreme Court precedent in this area, the court said you cannot, through an arbitration clause, prospectively limit the damages that are statutorily guaranteed to a plaintiff. Sounds like you're arguing that you regret your amended complaint. I don't regret it, no sir. I don't regret it at all. Now that you've thought about it, and I don't mean this as criticism, now that you've thought about it, it seems like maybe you should have persisted in the post-January 1st claim as well. And maybe you'll do that when and if the case goes back. Maybe so, Your Honor. Because hindsight is 20-20. Wisdom when received. I will tell you what I do regret. What I do regret is not bringing this issue to the forefront with the district court. And what I do regret is not better briefing that issue before the court today. Yeah, you didn't do it until standing here right now. I didn't. You know, I thought I heard you say there were four reasons why this case is different from Fourth Circuit precedent, and I've only heard, I think, one so far. You've only heard one. I really would like to hear the other three. Yes, sir. Yes, ma'am. I'm sorry. Another mistake by me. He pointed out one, and I just made another one. The second, third, and fourth reason. Okay? In the other cases that they've cited to you, there is a merger or integration clause. That gets us to the Karas-Notion v. Hallmark case. That's in the Levine case. Not present here. If they wanted to go back and they wanted to capture that first contract, they needed a merger or integration clause that says, we're going back, and everything that went before, we're capturing, and you just don't have that in this case. They thought they did it by saying anything that arises out of employment with our company. Well, that doesn't, and that wording is fine to capture everything going forward. That absolutely captures everything from January 1st, 2012 going forward, but it didn't say anything, Your Honor, about going back and picking up contract one. Are you relying on the principle of South Carolina law that you construe ambiguities against the drafter? I'm not. You're not? I'm not. I'm not. That's surprising. You must not play tennis because you don't know what a law is. That was a beach ball. Go ahead. You argue your case the way you want. Well, because I'm afraid that I'm going to get blasted down on reply about how that principle gets overruled about the strong presumption of arbitration, if I say that. But you start with the contract, right? I mean, that's what you've been arguing to us. You start with the contract, but there is no ambiguity. I mean, there really isn't, because when you look at those two contracts, when you look at them side by side, they look different. They don't even look the same. You don't even have to speak English to know or read English to know that they look fundamentally different. And then when you read them, they certainly read fundamentally different. But I want to go back and finish answering Your Honor's question. The third thing is the relationship in some of those other cases that they have cited, the relationship of the parties contractually stayed the same. You saw that, for example, in the Levine case, which, by the way, also had the integration clause I was talking about, the merger integration clause. You saw that in, say, the Christian versus Comcast that they cited, which was a contract for cable television services. And, you know, in that case, cable television services just kept going. The only thing that changed was an arbitration agreement. Well, not so here. When you fundamentally change the contractual relationship of the employees, when they go from 1099 independent contractors to W-2 employees, when they go from no taxes being withheld, no employer match on Social Security to all that stuff happening, that's sort of another kind of class of cases. It's fundamentally different than what we have here today. And then the final thing, the fourth point I would make, would be where you have two contracts in time, like we have here today, contract one without an arbitration clause,  And what you see in those kinds of cases is where contract two, in its terms, contemplates there will be a, or contract one contemplates there will be a contract two. You saw that in the Drews case. You saw that in the American Recovery case. You don't see that here today. If the defendant had incorporated, by reference, the earlier agreement into the later agreement, they'd be on solid ground, wouldn't they? They would be on solid ground as to that. They would not be on solid ground because As to the enforceability? As to the enforceability. I understand. Because that's what they're really asking. May I finish answering your Honor's question? See, I'm out of time. That's really what they're asking this court to do today. They're asking you to rewrite contracts for them. They're asking you to do a couple of things. Rewrite and add a merger or integration clause. And rewrite and take out the parts that limit us to statutory, that limit our statutory damages. And Judge Gregory, you said it best in the prior oral argument. We can't rewrite contracts. You said it in the prior order. And so all we're asking today is that the court not rewrite contracts. Thank you. All right, thank you. Mr. Carbo, you have some time reserved. Thank you, Your Honor. I heard a lot of arguments about the enforceability of the agreement. But I think Judge Thacker got it correctly. That that's not been presented to the court. It wasn't presented to the district court. And it's certainly not presented to this court either. So I don't believe that's the proper issue before the court at this point. I think we are actually talking about You can affirm on different grounds, can't you? Your Honor, you can affirm on those grounds that have been raised at the district court level. At this point, there's been no complaint whatsoever as to the enforceability of the agreement beyond what has been brought, beyond what I just heard in oral argument today. I do think that if that issue was briefed, I think it would be clear that this arbitration clause is enforceable. But moving on to the issue that I think is properly before the court, which is the scope of the arbitration provision. And I hear opposing counsel over and over again. Why would it be enforceable? I mean, I realize he just brought it up today. But what would be your response about his point that you can't take away statutorily guaranteed rights? Well, two points, Your Honor. One, I don't believe that the contract itself takes away statutory rights. The contract itself says that punitive damages, the arbitrator can't award punitive damages that aren't measured by a party's actual damages. In both the FLSA and the South Carolina wage claim that have been brought in this particular case, the so-called punitive damages or liquidated damages would be measured by the party's actual damages. For the FLSA, essentially a double damage provision, and under the South Carolina wage law, a triple damage component. So I don't think that the contract itself does that. But more importantly, the courts are clear that those are issues for the arbitrator to decide as to, number one, whether or not... The arbitrator is not bound by the agreement to the extent that it would take away statutory rights. And the courts have been clear that they will compel arbitration and give some discretion to the arbitrator to, in fact, enforce the party's statutory rights, whether they be attorney's fees or some part of liquidated damages. Absolutely, Your Honor, and in fact, we've done that in other cases in other district courts throughout the country, and I would have done it in this case had it been presented to the district court. I'll tell Your Honor, like I would the district court, that Cellular Sales has no intention of taking away a party's statutory rights. Does that include the right to collective action? The right to collective action, my client will not... My client takes the position that it is a valid collective action waiver, and the Supreme Court has recently come down with opinions that indicate that... that have held that collective action waivers, even in the FLSA context, are... Yeah, what case was that? I wish you wouldn't have called me on it, Your Honor. No, no, that's fair. I believe it's the American Express case, and if I could remember the other party, I would tell you it's the American Express case. Well, that's class action. It's a class action. Collective action is not a class action. It's similar, and the argument in the American Express case was exactly that it prohibits a party from vindicating their statutory rights, and the court said that if the FLSA had... The court said that by prohibiting collective action, you're not prohibiting the individuals from pursuing their own individual rights, which is what the FLSA was there to protect. So I think the American Express case stands for that proposition. But if I could just briefly, Your Honor, address the scope issue, because I don't think... I hear arguments about we needed to put an integration clause in our contract in order to make the claims that my client thinks are subject to arbitration arbitrable, and I don't believe that's the case, because the Fourth Circuit has found that, and I'm quoting from the DuPont-Amphil case from 29607, only the most forceful evidence of a purpose to exclude the claim for arbitration will suffice to preclude a claim from going to arbitration. So I think it's the reverse of what opposing counsel said in this case. It's not that we need to demonstrate that some other claim is within the arbitration clause, but more importantly, did we do anything to exclude particular claims from the arbitration clause? And I don't think that's the case. I think the arbitration clause encompasses the entire employment relationship, whether it be pre- or post-January 1st, 2012, and the parties did nothing to exclude any time, any claims prior to that time. There simply was no temporal limitation on the... So let me see if I have this straight. Your argument is, these two plaintiffs were employees of a separate company before January 1st. Their respective companies had agreements with your client. January 1st comes, and now your client hires the former employees of a different company, and under their employment agreement, they have to arbitrate, even though you never called them employees before January 1st, and in fact, they were employees of a different company. That's... I mean, I think I fairly summarized your position, right? You did, Your Honor. I might state it in a bit of a different way if I could, is that had these two plaintiffs brought claims based on their independent contractor relationship under the independent contractor sales agreement that they had with my client... In other words, if they had alleged, for example, that they were... that their LLC and your client were the joint... together constituted a joint employer, under federal law, you know, we have lots of law about who is a joint employer, then you would say what? In that particular case... That would have been okay. I don't think that would be okay because they're still making the allegation that they were an employee of my client. So under no circumstances, once they sign those January 1st agreements, could they ever sue your client for anything? No, that's absolutely not my position. That's the company's position. They could sue my client for anything related to the independent contractor relationship, anything in connection with the sales agreement that they signed. There was a prior contract with the sales... So like breach of contract for non-payment of commissions or something? The contract itself has various provisions in it, including compensation issues. And what do you say about drafting ambiguities against the draft? Or interpreting ambiguities against the draft? I don't believe that applies in this case because I think the FAA, in the cases interpreting the FAA, give a strong presumption to the arbitration of claims and in this particular case, because the claims that have been asserted in this case and the language that the court chooses, does it touch matters that would invoke the arbitration provision? And I think without question, Your Honor, the allegation of an employment relationship prior to January 1st, 2012, necessarily touched matters that are incompetent. But you agree, do you not, that whether there's a contract for arbitration is a matter of state law? The interpretation is a matter of state law. And you agree that South Carolina has this canon that says ambiguities are construed against the draft? I would agree that that's a canon. But your argument is that the FAA somehow trumps or preempts that state law doctrine? If it doesn't preempt it, Your Honor, then it certainly is something that needs to be read in conjunction with the South Carolina state common law with respect to drafting the provision against the or to interpreting the provision against the drafter. I don't think that you can isolate an interpretation of an arbitration provision looking solely to state law without looking at also the FAA in the cases interpreting the FAA, because most importantly in this particular case, the parties agreed that the FAA would control. So I don't think you can look at it in isolation and interpret it against the drafter without looking at it that way as well, Your Honor. Thank you, Your Honor. Thank you very much.
judges: Roger L. Gregory, Andre M. Davis, Stephanie D. Thacker